UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

Case Number: 1:21-cr-45-DLF

v.

ANDREW JAMES WILLIAMS,
_____/

**RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM**

Andrew James Williams, by and through undersigned counsel, respectfully submits his Response to the Government's Sentencing Memorandum for consideration by this Honorable Court. The sentencing hearing is scheduled to commence on February 9, 2022.

**A. RESPONSE TO CERTAIN FACTUAL ALLEGATIONS**

1. In the first paragraph of its introduction, the government states that Mr. Williams participated on January 6th, but generally exaggerates Mr. Williams' conduct. He did, indeed, participate in what he expected to be a massive protest, but did not even witness any violence, much less contribute to it. On page 2 and elsewhere, the government asserts that Mr. Williams "must have been aware" of certain things, such as "the grave physical danger the rioting mob posed to the occupants of the Capitol building," but cites no evidence that Mr. Williams was actually aware that the demonstration had turned violent, rather than simply loud and obnoxious.[1]

---

[1] Washington, D.C., has been the sight of countless peaceful protests, some larger than the crowd that gathered on January 6, 2021. Without evidence, this Court should not conclude that Mr. Williams "must have been aware" of any danger posed to others.

2. Also on page 2, the government refers to the fact that Mr. Williams took pictures and videos inside the Capitol, as one reason why a harsher sentence should be imposed. Today, people carry cell phones everywhere, use them for everything, and everyone under roughly the age of 40 documents every aspect of his life and posts it on the internet for all the world to see. For young people, for better or worse, this is as natural and ordinary an action as picking up your wallet and putting it in your pocket or purse.

3. On page 6, the government notes that Mr. Williams did not express remorse. The unstated suggestion is that an expression of remorse cannot be genuine unless it occurs during or immediately after the offense. A more likely scenario, and the true one, is that he was caught up in the excitement of the protest, and only later, when the adrenaline began to wear off and his superior admonished him, did it begin to sink in that he had made a major mistake.

4. Also, on page 6 the government refers to several items discovered in Mr. Williams' home, among them a photograph of a Democratic member of Congress with a shooting target superimposed over her body. That type of poster/flyer is not an uncommon expression of disrespect or antipathy for a politician. It is political speech, protected by the First Amendment. And that is all it is. The searchers found it rolled up in a closet. It had no holes in it, to indicate that it had been used for target practice. There was no indication that it had been used for any unlawful purpose, or any purpose at all. Mr. Williams did not even buy it, he told the FBI that it was a "Secret Santa" gift,

and the government has not disputed that statement. Indeed, the FBI has already returned the item to Mr. Williams.

5. On page 8, the government states that depending on the time and location of their approach, "they" – that is, those who entered the Capitol – "may have" observed extensive fighting with police. Whatever "they" saw, Mr. Williams did not see any fighting. The fighting was over before he arrived.

6. On page 9 the government states that Mr. Williams "scaled" the Capitol. He did not. He climbed the steps. He had to pass scaffolding to do so, but he did not "scale" the scaffolding – he crawled under it, as did other persons in his video.

7. Also on page 9, the government states that Mr. Williams went to "at least one particularly sensitive area," without explaining what is particularly sensitive about the entrance to the Speaker's suite of offices.

8. Finally, throughout the government's sentencing memorandum it conflates the roles of different first responders. Military and law enforcement personnel are trained to breach positions held by others. Firefighters, emergency medical technicians, and paramedics receive no similar training. While all are law enforcement, firefighters, EMTs, and paramedics are first responders, they receive very different training given their differing roles when responding to emergencies. The government might rightly view those who participated on January 6th with past military or law enforcement service more harshly, but there is no reason why other first responders, like firefighters, EMTs, or paramedics, should be viewed similarly.

B. <u>ISSUES REGARDING DISPARITY</u>

On page 16, the government cites the sentences of several other participants in the events of January 6, 2021, as comparable to Mr. Williams. They are not. The relevant conduct of most of these defendants was more serious than that of Mr. Williams.

Mr. Jancart, for example, who was sentenced to 45 days incarceration, was a military veteran. He brought a gas mask and two-way radios to the Capitol. He was present during the riot, and though he committed no act of violence himself, he laughed and cheered while the rioters were breaking through police lines. He posted a video of the attack itself to Facebook.

Mr. Jancart's co-defendant, Mr. Rau, who received 45 days incarceration, also came prepared for violence. He brought Kevlar-lined gloves and a medical kit with him. He encouraged and incited violence by the rioters, though he committed no act of violence himself. He did scale a wall of the Capitol, using a bicycle rack as a ladder. He, too, made a video of the actual riot.

Ms. Spencer, who received 90 days incarceration, was part of a group that got into a physical fight, which the police had to break up, while on her way to the Capitol. She was one of those who surged past police officers who were trying to hold back the rioters, and she continued to participate in the riot after she saw acts of violence committed against police officers. Worst of all, she brought her 14-year-old child with her.

Mr. Waldon, who received 30 days home detention and three years' probation, also committed conduct somewhat more serious than did Mr. Williams. Mr. Waldon, a

veteran of the Navy and the Marine Corps, brought a gas mask to the Capitol. He scaled a wall of the Capitol building and entered through a broken window. He posted a photograph to Facebook showing the riot in progress, with the caption "I had just climbed the west wall."

However, in many respects Mr. Waldon is very similar to Mr. Williams. Neither injured anyone or damaged any property. No evidence exists that either carried any weapons, or engaged in any. Both demonstrated acceptance of responsibility, recognizing shortly after events that their conduct was wrong. Both cooperated with the FBI, both gave interviews and provided information to the FBI. In Mr. Waldon's case, it was important to the Court that all his cooperation occurred before his arrest. In Mr. Williams' case, this could not occur, because Mr. Williams followed the advice of his counsel and voluntarily turned himself in as soon as he discovered that a warrant had been issued for his arrest.

While the government might have made some effort to make consistent recommendations to the Court, the recommendation in this case encourages the Court to impose a sentence that is very disparate from similarly situated defendants. The government's recommendation seeks a sentence that is greater than necessary to achieve the goals of sentencing.

C. **CHARACTER LETTER**

After filing the sentencing memorandum, the undersigned received a character letter from Michael Murphy. That letter is attached to this response as Exhibit 1.

D. CONCLUSION

A sentence of time served, with $500 restitution and the mandatory $10 special assessment, would constitute a sentence "sufficient, but not greater than necessary to accomplish the goals of sentencing." Mr. Williams requests that the court impose this sentence. Alternatively, a sentence of not more than 12 months' probation would be sufficient.

Respectfully submitted on February 2, 2022.

**LAW OFFICES OF**
**HORWITZ & CITRO, P.A.**

*s/Vincent A. Citro*
**VINCENT A. CITRO**
District of Columbia Bar Number: 1531364
U.S. District Court Bar Number: FL0021
vince@horwitzcitrolaw.com
17 East Pine Street
Orlando, Florida 32801
Telephone: (407) 843-7733
Facsimile: (407) 849-1321
Attorney for Andrew James Williams

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 2, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to Peter C. Lallas, Assistant United States Attorney, at Peter.Lallas@usdoj.gov.

*s/Vincent A. Citro*
**VINCENT A. CITRO**
District of Columbia Bar Number: 1531364
U.S. District Court Bar Number: FL0021